THE REPUBLIC IRON AND STEEL COMPANY

*v.*

WILLIAM A. LEE.

*Opinion filed February 21, 1907—Rehearing denied June 6, 1907.*

1. PARTIES—*what is not misjoinder of defendants.* One standing in the relation of a vice-principal to the master owes the same duty as the master not to give a negligent order to the master's servants, and if he does so it is an affirmative wrong done in violation of a common duty owed by him and the master, which constitutes them joint tort feasors, and they may be properly joined in an action for damages resulting from such negligent order.

2. JUDGMENTS AND DECREES—*when a judgment in favor of one joint defendant does not release the other.* Where the master and his vice-principal are joined in an action for damages under an allegation that the plaintiff was injured as the result of a negligent order of the vice-principal, a verdict and judgment in favor of the vice-principal is not necessarily inconsistent with a verdict and judgment against the master, where the proof shows that the vice-principal, on the day the injury occurred, had not given any order to the plaintiff.

3. PLEADING—*when variance between allegations and proof is material.* There is a material variance between allegations of a count to the effect that plaintiff knew of the defect which caused his injury, had complained thereof and was continuing in the service under the master's promise to repair, and proof that he did not know of such defect until the injury occurred; and it is improper to allow a recovery in such case in the absence of any amendment of the pleadings.

4. SAME—*when motion sufficiently points out variance.* A motion for a peremptory instruction or in arrest of judgment which relies upon a variance need not state specifically the language of the pleading and set out the evidence complained of, and it is sufficient if it so presents the matter to the trial court that it can clearly understand the grounds of the motion and pass intelligently thereon.

5. MASTER AND SERVANT—*when servant assumes risk of injury.* An experienced servant of mature years who, when assisting to repair a broken belt, was accustomed to stand upon an angle-iron, leaning one arm upon the revolving shaft, while he pulled the belt over the shaft and held it until another man repaired it, is charged with knowledge of the danger of such practice, and by continuing therein assumes the risk of injury.

6. SAME—*servant must be misled by order of master to justify his relying upon it.* In order that a servant shall not be deemed to have assumed the risk of injury when ordered by the master-to do work in a certain way he must have been misled by the order, and if he well knew the dangers attendant upon the work he cannot rely upon the order as excepting him from the assumption of the risk.

7. SAME—*servant may assume risk of master's negligence.* Even if the master is negligent in the matter of furnishing the servant with a reasonably safe place in which to work, yet if the defects and dangers therefrom are fully known to the servant he cannot hold the master liable for an injury if he voluntarily continues in the employment without complaining of such defects.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Second District affirming a judgment for $10,000 rendered by the circuit court of Rock Island county against the Republic Iron and Steel Company, appellant, in an action for personal injuries brought by William A. Lee, the appellee, against appellant and Joseph Worker.

The declaration consisted of three counts. The first count alleged that on September 11, 1903, appellant was, by its agents and employees, operating a steel mill in the city of Moline, in this State; that Worker was appellant's master mechanic, and had power, and it was his duty, to keep the machinery and appliances of said company in repair and safe for its employees to work about; that appellee was on said date in the employ of and working for appellant as a laborer in its steel mill; that Worker had full control and authority over appellee, with full power to hire and discharge him; that appellee was also under the control and direction of one Constance V. Peterson, who had full control and authority over appellee and who stood to appellee as the representative of appellant, their common master; that on said day appellee was, by the order and direction of

Worker and Peterson, commanded to assist in splicing or repairing a large two-ply belt, of the width of four inches and sixty or seventy feet long, which was used in the mill; that while so engaged he was obliged to climb to and stand upon an angle-bar about two inches wide and six feet from the floor, and to support himself thereon by holding on to a revolving shaft about four feet above said angle-bar, for the purpose of shifting or drawing said belt over said shaft; that it then and there became the duty of defendants to exercise care and prudence in providing a proper and secure place for appellee to stand upon, so that he could have the free use of both hands for shifting or drawing said belt over said shaft without danger, and also became the duty of said defendants to stop said revolving shaft while said belt was being repaired, but that they neglected their duty and failed to provide a proper platform to stand upon and failed to stop said revolving shaft; that while appellee was drawing said belt over said shaft, in the exercise of due care and without knowledge of the danger of his position, said belt caught appellee's left arm between the belt and shaft in such manner that he was drawn to and revolved with said shaft, and was thereby injured.

The second count varies from the first in eliminating the allegations of negligence founded upon the failure to stop the shaft.

The third count differs from the first in that it alleges that the belt in question frequently got out of repair; that a portion thereof about four feet long should have been removed and its place supplied with another piece, but that defendants, not regarding their duty in that behalf, caused said portion to be fastened together with staples or tacks, thereby rendering the service of the plaintiff more hazardous, and that thereupon appellee, shortly before the injury, "objected to defendants about the use of said belt so tacked together" and requested them to have the belt properly repaired, and that they promised appellee to have the same re-

paired; that appellee, relying on this promise, continued in the performance of his duties for a reasonable time to permit the performance of said promise, but that defendants wholly neglected and failed to provide a new belt or properly repair the belt in use, by reason whereof it frequently broke. This count then proceeds as the first, except it alleges that the injury was occasioned by reason of the defective belt and the defective manner of its repair, and by reason of the staples or tacks in the belt.

The defendants severally pleaded the general issue to the declaration. A trial was had and the jury found the issues in favor of Worker but against appellant, and assessed appellee's damages at $10,000. Appellee filed a motion for a new trial as to Worker, but this motion was subsequently withdrawn, and judgment was entered against appellee, in favor of Worker, for costs. Appellant also moved for a new trial, but its motion was denied, and after overruling a motion in arrest of judgment, the court entered judgment upon the verdict against appellant for $10,000 and costs, from which the appeal was taken to the Appellate Court.

The evidence shows that the belt which appellee was assisting to repair when he was injured transmitted power from a shaft known as the "main shaft" to another called the "counter-shaft." The main shaft was propelled by means of a belt running direct to the engine. This shaft was about 175 feet long. It extended east and west, and was supported ten feet above the floor by upright beams or posts. The angle-bar mentioned in the declaration, and referred to by the witnesses as an angle-iron, was two and one-half inches in width on the top. It extended east and west directly under and about four feet below the main shaft. Its purpose was to furnish a brace for the beams which supported the main shaft. The counter-shaft was located thirty-five or forty feet south of the main shaft and was parallel therewith. It transmitted power to a fan at the forge in the blacksmith department of appellant's mill.

The belt between the main shaft and counter-shaft had for some time prior to September 11, 1903, been in a defect- ive condition and had frequently broken. On one of these occasions, more than a year before the injury, a portion of the belt about four feet in length was in such defective condition that the millwright asked permission of Worker to remove that portion and put in a new piece. Worker told him not to cut out the defective portion, but to punch holes, running lengthwise, in the defective portion and to put in belt-staples, which the millwright did. The testimony shows that this was not only an unusual way to repair a belt, but that the use of those staples in that manner was dangerous to persons who might be required to handle the belt.

Appellee had been in the employ of appellant for over three years when he was injured and was twenty-two years of age. Peterson, a blacksmith at the mill, under authority from Worker to hire any person he chose, had employed appellee to assist him at the mill. Appellee says that Peterson was his "boss," and that his (appellee's) duties were to as- sist Peterson "with whatever help he needed." Appellee had frequently since his employment at the mill assisted Peterson and the millwright in repairing the belt between the main shaft and counter-shaft. During the latter part of his em- ployment his assistance had been required on an average of once a week. The part of the work that appellee performed in repairing the belt was to place one end of the broken belt over the main shaft and to draw the belt over the shaft and hold it until the millwright finished lacing the ends together. Appellee, according to his testimony, in order to reach the shaft invariably climbed upon the angle-iron, placed the end of the belt over the main shaft while the shaft was revolv- ing, and continued standing on the angle-iron, pulling or holding the belt so that the ends could be drawn together by Peterson and the millwright, standing on the floor, until the belt had been repaired, after which the speed of the main shaft would be diminished so that the belt could be placed

upon the pulleys. This manner of doing the work was in accordance with directions given by Worker. Whether given directly to appellee or to others, and by such others to appellee, does not clearly appear. Appellee says that the first time he assisted in repairing this belt was shortly after he was employed to work at the mill; that he was at that time standing near the blacksmith and Worker directed him to assist; that thereupon, and usually thereafter when a break occurred, he helped to fix that belt, but that with the possible exception of one other time, which was not the occasion of his injury, Worker did not thereafter direct him to help. At such other times he was asked or ordered to help by either Peterson or the millwright.

On September 11, 1903, the belt broke three times. The first two times appellee did not assist in its repair. The third time Peterson called upon appellee to help. The belt had fallen off the pulleys and shafting to the floor. Peterson took one end, got upon an iron rod under the counter-shaft, placed that end of the belt over the counter-shaft, and got down to the floor, holding that end of the belt. He then told appellee to get up on the angle-iron and place the other end of the belt over the main shaft, which was then revolving. Appellee climbed up on the angle-iron, the end of the belt was handed to him by the millwright, and he passed that end over the revolving shaft and handed it back to the millwright. The belt, instead of running straight from the main shaft to the counter-shaft, was crossed, so that the counter-shaft would revolve in the opposite direction from that in which the main shaft revolved. Appellee says that this crossing of the belt was close to the main shaft, and left only a small portion of the belt between the crossing thereof and the shaft to catch hold of for the purpose of drawing the belt over the shaft after the end had been handed to the millwright. After handing the millwright the end of the belt which he had placed over the main shaft, appellee, as was his custom, remained standing on the angle-iron, pull-

ing on the belt, so that Peterson and Worker, who were standing on the floor, could bring the two ends near enough together to be laced. While engaged in this part of the work appellee was compelled to place his right hand or forearm against the revolving shaft in order to steady himself and to keep from falling off the narrow angle-iron, and he was for that reason only able to use his left hand in handling the belt and drawing it over the shaft. While in this position and while doing the work in the manner stated, and before the ends of the belt had been drawn entirely together by the millwright, appellee's left hand was caught between the belt and the revolving shaft and torn from his arm, and he was otherwise injured. He says his hand was caught on the belt staples and drawn in between the belt and shaft, and that this was the first knowledge he had of the presence of the staples in the belt. The belt wrapped around appellee in such a manner that he was turned around with the shaft until the engine was stopped. He was taken down by Peterson and the millwright.

Appellee proved that Worker held the position of master mechanic at the mill; that he kept the machinery in repair and kept the machinists and blacksmiths at work, and that he hired and discharged mechanics. It also appeared from the evidence that complaints regarding the condition of machinery and appliances at the mill were made to him, and that appellee had complained to him about the weak condition of the belt and that he had promised to get a new belt. Appellee testified that he never complained about the staples in the belt; that he did not know until his hand was caught that the staples were in the belt.

At the close of appellee's case in chief, appellant moved to strike out all testimony in regard to the knowledge or lack of knowledge of appellee concerning the use of the staples in the belt, because such evidence varied from the allegations of the declaration, particularly the third count thereof. In the motion made at the close of appellee's case

in chief, and renewed at the conclusion of all the evidence, for a peremptory instruction, the matter of variance above mentioned was assigned as one of the reasons in support of the motion.

Errors assigned and argued question the action of the court in refusing to strike out the testimony in reference to the knowledge or lack of knowledge of appellee in regard to the presence of the staples in the belt, in refusing to direct a verdict for appellant at the close of all the evidence and in overruling appellant's motion in arrest of judgment.

RICHARD JONES, Jr., BURTON F. PEEK, and CYRUS E. DIETZ, for appellant.

W. R. MOORE, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Appellant contends that there was a misjoinder of defendants in the suit brought by the appellee against it and Worker, and that its motion in arrest of judgment should therefore have been sustained. In this connection a number of authorities are cited from foreign States and two from the Appellate Courts of this State as sustaining the proposition that a master and servant cannot be joined as defendants in an action for personal injuries where the master can only be held liable on account of the negligence of the servant with whom he is joined as defendant, under the doctrine of *respondeat superior*. We do not consider those cases applicable here. The declaration charged that Worker and Peterson gave appellee a negligent order and that his compliance therewith resulted in the accident. Worker stood to appellee in the relation of a vice-principal. He, personally and individually, owed to appellee the duty not to give him any order negligent in character. The same duty rested upon the appellant. Consequently, if a negligent order was

given by Worker it was an affirmative wrong done by him in violation of a common duty owed by appellant and Worker to appellee and constituted Worker and appellant joint tort feasors, and they were therefore properly joined. (5 Thompson on Corporations, sec. 6289; *Deere* v. *Chicago, Milwaukee and St. Paul Railway Co.* 85 Fed. Rep. 876; *P. G. M. Co.* v. *A. & S. C. Co.* 118 U. S. 264; *Howe* v. *Northern Pacific Railway Co.* 30 Wash. 569; *Morrison* v. *Northern Pacific Railway Co.* 34 id. 70.) The motion in arrest of judgment was rightfully denied.

It is then contended that a verdict and judgment against appellee having passed in favor of Worker, the judgment against appellant must be set aside and judgment entered in its favor in this court. The appellee's proof showed that Worker gave him no order to assist in repairing the belt on the day of the accident. Under these circumstances a judgment in Worker's favor is not necessarily inconsistent with a judgment against appellant.

The third count of the declaration alleged that repairing the belt by using the staples was repairing it in a defective manner; that these staples had been placed in the belt some time before the injury, thereby rendering the work of appellee in assisting in the repair of said belt when it would thereafter break, more hazardous; that shortly before the injury appellee "objected to defendants about the use of said belt so tacked together" and requested them to have said belt properly repaired, which the defendants promised to do, but that they failed to properly repair said belt. The proof made by appellee, however, was, that he did not know of the presence of these staples in the belt until his hand was caught on them at the time of the injury, and that he never at any time made any complaint concerning those staples. Appellee first insists there is no variance, by the following language quoted from his brief, to-wit: "It is said in the brief of appellant that the declaration averred that plaintiff had knowledge of the use of staples. The appellee contends

that the declaration does not so state, but simply gives a description of the condition of the belt, which was ascertained after the accident."

This makes important the precise words used in the third count, which, after averring the duty of defendants to replace the defective piece of the belt, continues: "The defendants, not regarding their duty in that behalf, caused said portion to be fastened together with staples or tacks, thereby rendering the service of the plaintiff in assisting to repair said belt more hazardous than it had theretofore been; and thereupon the plaintiff repeatedly, and shortly before the injury, objected to defendants about the use of said belt so tacked together, and repeatedly, and shortly before said injury, requested defendants to have said belt properly repaired, and said defendants promised the plaintiff to have the same repaired; that plaintiff, relying on said promise, continued in his said service and in the performance of the duties thereof for a reasonable time, to permit the performance of said promise on the part of the said defendants, but the said defendants wholly neglected and failed to provide a new or properly repair said belt, and by reason of said neglect and failure of the said defendants to supply a new or properly repair said belt, it frequently broke and gave away," etc.

We think that the averments in reference to the staples do not simply give a description of the condition of the belt which was ascertained after the accident. The statements in reference to the complaint made by appellee, the promise to repair and the continuance in the employ to permit defendants to comply with their promise, all show that the meaning of the language used is that appellee had knowledge of the existence of the staples or tacks in the belt prior to the time of the accident.

Appellee says, however, that if there be a variance, appellant did not raise the question in the proper way nor in apt time. The variance was called to the attention of the trial

court immediately upon the close of the plaintiff's evidence in chief by a motion to strike out the testimony of the plaintiff regarding his knowledge or lack of knowledge of the use of the staples in the belt, "for the reason that it varies from the allegations of the declaration, particularly from the allegations of the third count thereof." Appellee might at that time have sought leave to amend his declaration to conform to his proof. The variance was again pointed out in the motion for a peremptory instruction at the close of all the evidence, at a time when the trial court could have allowed the amendment, or, in the absence of amendment, could have given the peremptory instruction if the proof offered in support of the second or third count did not warrant its denial.

Appellee insists that the motions did not specifically point out the variance. It is not necessary in the motion to set out the language of the pleading and then to set out the evidence and point out by the motion the exact difference between the two. It is only necessary to so present the matter that the trial court can clearly understand the grounds of the motion and pass intelligently thereon.

In *Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540, it is said (p. 549) : "To present the question of variance as one of law the evidence should have been objected to at the time it was offered on that ground, or, when the variance became apparent, counsel should have moved to exclude the evidence, or in some other appropriate way the question should have been so raised that the trial judge could have passed upon it."

In our judgment the question was properly presented, and the variance was material. Appellee by the third count evidently intended to base a cause of action on statements to the effect that appellee knew of the presence of the staples, which had been placed in the belt more than a year prior to the injury; that he objected to handling the belt with those staples in it; that the defendants thereupon promised to

have them removed and to have the belt properly repaired, and that appellee, relying on this promise, continued in the service for a reasonable time, during which time the accident occurred. The purpose was to show that appellee did not assume the risk arising from the presence of the staples in the belt, even though he knew of their existence.

It was essential to appellee's case that he aver and prove either that he did not know of the defect which caused the injury and was not chargeable with knowledge of it, or that he knew of it and that the circumstances were such that he had not assumed the risk. (*Sargent Co.* v. *Baublis*, 215 Ill. 428, and cases there cited.) When he alleged, as in the third count, that he knew of the defect, had made complaint thereof, and was continuing in the service under a promise of the master to repair at the time he (appellee) was injured, he should not have been permitted to recover under proof that he did not know of the existence of the defect, unless the declaration was amended to conform to such proof. If such procedure as was here followed were to be permitted, then, as said in *Wabash Western Railway Co.* v. *Friedman*, 146 Ill. 583, "a declaration would be a delusion, and instead of affording a defendant notice of what he was called upon to meet, it would be a deception." If one purpose of the declaration is to notify the defendant of the nature and character of the plaintiff's demand, so that he may prepare to meet the charge against him, then the third count of the declaration in this case has failed to fill its office. Appellant could not be expected to seek evidence to show that appellee knew of the presence of the staples in the belt, when he, in effect, admitted in his declaration that he knew of their presence and set up a state of facts which would excuse him from the assumption of risk which might arise from that knowledge. Appellant was entitled to an opportunity to prepare its defense to the case made by the proof. It did not have such opportunity, and the evidence showing that the appellee did not know of the presence of the staples in the belt should

have been stricken out, unless appellee, by cross-motion, obtained leave to amend his declaration to conform to the proof and made amendment accordingly. Had the court pursued this course, then, upon a proper showing, appellant would have been entitled to a reasonable time to prepare its defense to meet the case stated in the amended count of the declaration.

It is next contended that appellee assumed the risk of the defects from which he was injured, and that the court therefore erred in refusing the peremptory instruction offered at the close of all the evidence. We agree with appellant that appellee assumed the risk arising from the defects which form the basis for the charges of negligence contained in the first and second counts, but it is apparent that it can not be held, as a matter of law, that he assumed the risk arising from the presence of the staples in the belt if he did not know of their presence and was not chargeable with knowledge of their presence. In reference to the first and second counts, appellee himself testified that he always stood on the angle-iron to do the work in which he was engaged when injured, and that the shaft was never stopped until the belt had been repaired and was ready to be placed on the pulleys. Certainly no one had a better opportunity than appellee to know the dangers attendant upon standing on the angle-iron or attendant upon placing the belt over the revolving shaft. These defects were not hidden or latent. Appellee well knew what sort of a standing place the angle-iron afforded, and well knew that the shaft would not be stopped while he performed his part of the work. Knowledge of the conditions under which this work was to be done was to a man of appellee's age and experience knowledge of the dangers arising therefrom. *Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492.

An exception to the doctrine of assumed risk exists where a servant is ordered by his master to do certain work which is attended with danger of which he is not fully cog-

nizant, and he relies upon the order to do the work as an assurance that he may safely perform the task. This case, as stated by the first two counts of the *narr.*, is not within the exception, however, because appellee had full and complete knowledge of all the dangers attendant upon and resulting from the negligence charged by those two counts, in so far as the evidence tended to prove the same. It is only where the servant has been misled by the order of the master that the exception exists. *Rohrabacher* v. *Woodward,* 82 N. W. Rep. 797; *Toomey* v. *Eureka Iron and Steel Works,* 89 Mich. 249; *Anderson* v. *Akeley Lumber Co.* 47 Minn. 128; *Reis* v. *Struck,* 23 Ky. L. 1113; *Breckenridge & P. Syndicate* v. *Murphy,* 18 id. 915; *Haas* v. *Balch,* 56 Fed. Rep. 984; *Showalter* v. *Fairbanks, Morse & Co.* 88 Wis. 376.

Appellee urges, however, that the servant never assumes the risk of defects arising from the master's negligence. In *Browne* v. *Siegel, Cooper & Co.* 191 Ill. 226, it is said that even if the master fails in his duty to furnish the servant a place ordinarily safe in which to work, and there are to the knowledge of the servant defects which render the place unsafe, the servant is held to have assumed the hazard, for he cannot go on, with knowledge of the danger, without complaint until he is injured and then hold the master liable. To the same effect are *Armour* v. *Brazeau,* 191 Ill. 117, *Cichowicz* v. *International Packing Co.* 206 id. 346, and *McCormick Harvesting Machine Co.* v. *Zakzewski,* 220 id. 522. We think these cases adverse to the contention of appellee last above stated.

As no recovery could be had under the proof as to the first and second counts of the declaration, for the reason that the undisputed evidence shows that appellee assumed the risk of injury from the negligence charged by those counts, and as there was a material variance between the third count and the proof offered in support thereof, the judgment of the circuit court should not be allowed to stand. At the close of all the evidence, in the absence of an amendment to the

third count of the *narr.* obviating the variance, a verdict for appellant should have been directed.

It is unnecessary to discuss the other questions presented by appellant's brief and argument.

The judgment of the Appellate Court and the judgment of the circuit court will be reversed and the cause will be remanded to the circuit court.

*Reversed and remanded.*

FARMER and VICKERS, JJ., took no part in the decision of this case.