## Barbara Fleck Caird, by Marie Fleck her next friend, Appellee, v. Charles F. Atzel, Appellant.

### Gen. No. 18,288.

1. MASTER AND SERVANT, § 411*—*when obedience to orders does not relieve from assumption of risk*. The fact that a girl employed in a laundry is ordered to "go around and feed" a mangle does not relieve her from assumption of risk of injury, where she had knowledge of the work and the dangers were apparent.

2. MASTER AND SERVANT, § 410*—*when order of master relieves from assumption of risk*. An order of the master relieves from assumption of the risk, only when the servant has been misled thereby to do work which is attended with unknown dangers, and he relies upon such order as an assurance that the work may be safely performed.

3. MASTER AND SERVANT, § 195*—*when master need not warn servant of dangers*. Employer is not liable for failure to warn servant of the danger in operating a laundry machine where the servant has sufficient knowledge from experience and is of sufficient age and intelligence to appreciate the risk.

4. MASTER AND SERVANT, § 600*—*when evidence of matters not averred, inadmissible*. Evidence as to certain defects in a machine prior to the accident, *held* inadmissible where there is no averment as to such defects in the declaration.

5. APPEAL AND ERROR, § 1467*—*when admission of improper evidence, prejudicial error*. Admission of evidence as to certain defects in machinery not counted upon in the declaration, *held* prejudicial error.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed October 9, 1913.

J. MARION MILLER, for appellant.

FRANCIS X. BUSCH, FRANK A. ROCKHOLD and HENRY POLLENZ, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.
This is an appeal from a judgment for five thou-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

sand dollars in favor of appellee, hereinafter called the plaintiff, for damages for a personal injury sustained by her while she was working in a laundry belonging to appellant, hereinafter called the defendant. Plaintiff was sixteen years of age at the time of the accident, and before entering defendant's employ had worked in other laundries, in one of which she had worked for at least ten weeks upon and around a "mangle," a machine used for drying and pressing articles after they have been washed. There was a "single-roll" mangle in defendant's laundry, consisting of a horizontal cylinder revolving above and within a semicircular steam chest. At the edge of one side of the steam chest was a feed plate, and above and parallel with the feed plate was a brass rod, intended as a guard rail, which, under ordinary circumstances, was fastened about an inch above the feed plate and a couple of inches from the cylinder. In operating the machine the operator spread out a wet towel or similar article upon the feed plate and pushed it under the guard rail towards the cylinder, which, revolving slowly, carried the article down between the cylinder and steam chest. According to plaintiff's testimony, while she was thus "feeding" towels into the mangle one of them "got crooked." She attempted to straighten it out with her *left* hand, and in some way not shown by the evidence her *right* hand was caught and drawn into the space between the cylinder and the steam chest, crushing her right hand and seriously burning her arm. She screamed, and one of the other employes in the laundry stopped the machine, reversed the cylinder and released her hand and arm. Plaintiff testified that her right hand went in *under* the guard rail, which (she said) was at that time about three inches above the feed plate. This last statement, however, is not corroborated by any other witness, and the doctor and nurse at the hospital where she was taken testified that she then stated to the doctor, who wrote down the statement on the hospital sheet, that

she was feeding a towel into the mangle, that the towel went in crooked, and that she "reached over guard to straighten and hand got caught." The witness who released her hand testified that when she screamed he did not notice whether her hand was over or under the guard rail, but that she was "reaching her hand over the mangle   *   *   *   was reaching over, up above."

The case went to the jury on four counts of the seven originally filed. The first, sixth and seventh counts were dismissed by the plaintiff. Each of the four remaining counts avers that the plaintiff was employed to feed clothes into the mangle, that she was a minor sixteen years of age, and was without experience or knowledge of the danger of working at and about the mangle. In the fourth count, the negligence charged is that the defendant "negligently and carelessly permitted the said machine to become and remain out of repair in this, that the feed rolls and rolls and chests and parts were not properly adjusted, and by reason thereof, it was exceedingly difficult to feed clothes into the same, and to feed them into the said rolls straight." We are unable to find any evidence in support of this averment of negligence.

The negligence charged in the second count is that the defendant negligently ordered the plaintiff to feed clothes into the mangle without instructing or warning her of the danger of having her fingers caught, crushed and burned between the "said rolls and steam chests." In our opinion, the evidence is clearly insufficient to justify a recovery under this count. The "order" proved was a direction given to the plaintiff, while she was folding articles as they came out of the mangle, to "go around and feed." This was the work she was employed to do. She had been feeding into the mangle for two days at defendant's laundry, and the same kind of work for weeks elsewhere. Whatever danger there was in doing it, was perfectly apparent. Her own evidence shows that she knew that if her hand should be caught, it would be crushed and

burned. This count does not mention the guard rail, nor charge any defect whatever in the machinery. The mere failure of an employer to give notice of danger and instructions to his employe does not make the employer liable if it be shown that the employe had obtained the requisite knowledge from experience or other sources, and that the employe was of sufficient age and intelligence to understand and appreciate the risk to which he or she was exposed. *Herdman-Harrison Milling Co. v. Spehr,* 145 Ill. 329, 334; *Jones v. Roberts,* 57 Ill. App. 56, 60. There is no evidence that plaintiff was not old enough and intelligent enough to fully understand and appreciate the risk she incurred in working at the mangle, and the mere fact that she was told to work there cannot relieve her from the risks assumed by her contract of employment. It is only when the employe has been misled by an order to do work which is attended with dangers unknown to him, and he relies upon such order as an assurance that the task may be safely performed, that he does not assume the risk. *Republic Iron & Steel Co. v. Lee,* 227 Ill. 246. Plaintiff claims that at the time the order was given she was suffering from a cut on her left elbow, which was bleeding and painful; but there is no count in the declaration which bases any claim for damages upon any alleged physical inability or unfitness to do the work she was told to do, except so far as her youth and alleged inexperience might be so considered.

In the two remaining counts the gist of the negligence charged is that the guard rail "was adjusted so high from the feed plate that it did not serve the purpose of a guard," and was insufficient to "prevent the hands and fingers of the operator from being drawn into said machine." The only competent evidence in support of these counts is the evidence of the plaintiff that at the time of the accident the guard rail was three inches above the feed plate, and the evidence of one Knudson, who said he was in the laundry-machine

business and was familiar with the operation of laundry machines, and that it was practical to operate the guard at a height of about three-fourths of an inch above the feed plate. In addition to this evidence, however, the court permitted the witness, Holstrom, who released the plaintiff's hand from the machine, to testify that a spring upon the pressure lever was broken, and that several days prior to the accident there was a screw loose on the guard rail, which permitted the guard rail to "move up and down." This evidence was objected to, the objections were overruled, and exceptions were duly preserved. We are of the opinion that it was prejudicial error to admit this evidence. The fact that a spring was broken on the pressure lever, if true, or that a screw was loose several days prior to the accident, could have no possible bearing in this case under the allegations of the declaration. There is no averment in the declaration of any such defects, and there was no proof tending to show that either the broken spring or the loose screw had anything whatever to do with the accident. On cross-examination, the witness Holstrom admitted that the loose screw had been tightened and that defect thereby remedied at least two days before the accident. This evidence as to alleged defects in the machine not counted upon in the declaration was well calculated to confuse the jury and to lead them to believe that because of such defects the plaintiff was entitled to recover, whether her hand went under or over the guard rail, which was the real question of fact under these counts. The plaintiff must recover, if at all, upon the allegations of her declaration. It is impossible for any one to say just what effect this evidence had upon the jury.

Upon the whole record, we think the court erred in overruling the motion for a new trial, and for the error in that respect the judgment will be reversed and the cause remanded.

*Reversed and Remanded.*