FRANCES KALINSKI, Admx., Defendant in Error, *vs.* THE WILLIAMSON COUNTY COAL COMPANY, Plaintiff in Error.

*Opinion filed April 23, 1914.*

1. MINES—*when a mine manager need not inspect a working place.* Where a fall has occurred in a coal mine, making a place dangerous, and the place has been examined, marked and reported by the examiner, it is the mine manager's duty to order the timbermen employed for that purpose to go to the place and clean up the fall, but he owes no duty to the timbermen to personally inspect the place before sending them there.

2. SAME—*mine manager is not required to personally go with timbermen.* In an action for personal injuries received by a timberman, it is error to ask the mine manager, against objection, if he was well and healthy at the time of the injury and able to walk about the mine and whether there was any reason why he could not have gone to the room where he sent the timberman, as such a question would lead the jury to understand that the mine manager was negligent in not personally going to the room and examining it before directing a timberman to clean up a fall in the room.

3. MASTER AND SERVANT—*when duty to warn of unknown dangers does not exist.* The duty to warn an inexperienced servant of unknown dangers before exposing him to them does not exist as to a danger which is involved in the very nature of the employment, such as the duty of a timberman to go wherever directed by the mine manager to timber up dangerous places in the mine caused by falls.

4. SAME—*when general order to do work does not constitute negligence.* A general order to do work in the usual course of employment does not constitute negligence nor impose any liability upon the employer.

5. SAME—*when proof of willfulness is essential.* To justify an inference of willfulness upon a charge of mere negligence there must be some evidence which will authorize the presumption of a conscious or intentional disregard of duty or of intention to injure.

263 – 17

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Williamson county; the Hon. A. E. SOMERS, Judge, presiding.

DENISON & SPILLER, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

NEELEY, GALIMORE, COOK & POTTER, SCHAEFER & KRUGER, and T. R. MOULD, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the Fourth District affirmed a judgment recovered by Frances Kalinski, administratrix of the estate of her husband, Peter Kalinski, deceased, in the circuit court of Williamson county, against the Williamson County Coal Company, for damages occasioned by his death while in the employ of the coal company as a timberman, and a writ of *certiorari* was granted to bring the record here for review.

The action was not under the Mining act, and an intention to make any claim or to sustain the judgment under any provision of that act is disclaimed by counsel.

There were five counts in the declaration, all charging the same act of the mine manager as causing the death of Kalinski, and some alleging that the act was negligent, merely, while others charged that it was willful. Each count alleged that Kalinski was employed to work in the mine as a timberman's helper; that his duty was to assist in cleaning up falls of slate from the roof of the mine and to assist in propping and securing the roof; that a fall of slate and other substances occurred shortly prior to the morning of December 12, 1910, in an entry called the second west off the eleventh north on the east side, leaving accessible edges and other portions of the roof in a danger-

ous condition and liable to fall, and that while Kalinski was working in said room cleaning up the fall a large portion of the roof fell upon him, so injuring him that he died, leaving the plaintiff, his widow, and three children, surviving. The first count alleged that the dangerous condition was discovered and marked by the defendant's mine examiner on said morning before the men entered the mine; that Kalinski did not know of the danger nor have equal means of knowledge with the defendant; that the defendant, with knowledge of the danger, ordered him to hurry up and assist in cleaning up the fall and failed to warn him of the dangerous condition, and that the danger mark had become obliterated at the time he commenced to work. The second count alleged that the dangerous condition and liability of the roof to fall was discovered and marked by the defendant's mine examiner the morning before the men entered the mine but Kalinski did not know of the danger; that defendant, with knowledge thereof, ordered Kalinski to hurry up and assist in cleaning up the fall and willfully failed to warn him of the dangerous condition, and that the mark had become greatly obliterated and effaced when he commenced to work. The third count alleged that the condition of the roof was discovered and marked by defendant's mine examiner; that Kalinski did not know of the danger nor have equal means of knowledge with the defendant; that defendant, with knowledge of the danger, negligently ordered him to hurry up and assist in cleaning up the fall, and that the mark had become greatly obliterated and effaced when he commenced to do the work. The fourth count alleged that Kalinski was inexperienced in detecting dangerous conditions in the roof, having had less than two weeks' experience in that work, which the defendant knew or by the exercise of ordinary care could have known; that by reason of inexperience Kalinski did not understand and appreciate the danger; that a fall had occurred, leaving the roof in a dangerous condition and liable

to fall, which defendant knew or by the exercise of due care might have known, and which Kalinski did not know and did not have equal means with the defendant of knowing, and that the defendant ordered him to assist in cleaning up the fall and failed to warn him of the danger. The fifth count alleged that the condition of the roof was discovered and marked by the mine examiner before the men entered the mine; that Kalinski did not know of the danger, and the defendant, with knowledge of the danger, willfully ordered him to hurry up and assist in cleaning up the fall, and that the mark, at the time he commenced to work, had become obliterated and effaced.

There was no material conflict in the evidence, the only difference being that the mine manager thought Kalinski had been a timberman three or four weeks, while Kalinski's brother said that it was five or six days, and may be one day more. Kalinski was a Lithuanian, who had been in this country twelve or thirteen months and had worked for the defendant for six or seven months at the bottom of the shaft as cager or assistant cager, assisting in loading and unloading men and cars of coal on and off the cages and attending to the operation of the cages in the shaft. Mike Waski was a timberman in the mine who had worked for the defendant about eight years, and he was also a Lithuanian. The duties of timbermen were to go wherever directed by the mine manager in the mine and timber up places where there had been falls which rendered the place dangerous. If a fall occurred making a place dangerous it was the duty of the mine manager to direct the timbermen to go to the place and timber it up and make it safe. Kalinski applied to the mine manager for a job as timberman and asked to be allowed to go as a timberman with Mike Waski. The mine manager asked him if he could do that character of work, and he said he thought he could. The mine examiner made his regular examinations, as required by law, between midnight and morning of each day

and marked falls and dangerous conditions and reported the same to the mine manager, who would send the timbermen to make them safe, as required by the Mining act. On the morning of December 12, 1910, the mine examiner found a dangerous condition in the main east entry, or straight east entry, as it was called by some of the witnesses. He also discovered a fall in the second west off the eleventh north entry, leaving ragged edges, which were loose and dangerous. He made conspicuous marks with chalk on the loose edges and made a danger mark with chalk in the bottom of the roadway, and reported the condition to the mine manager and entered his report in the daily inspection book. The mine manager first directed Waski and Kalinski to timber up the place in the main east entry, and they went there and worked until about ten o'clock, taking out broken timbers, pulling down loose rock and putting in new timbers. The second west off the eleventh north entry had been enlarged into a room, and two Frenchmen,—Constantine Coin, who had worked in coal mines twenty-two years, and Albert Rembert, who had been a coal miner fourteen years,—were mining coal there. The mine manager was standing at the place where Waski and Kalinski were working in the main east entry, when the two Frenchmen came up and told him they were marked out of their place by the mine examiner on account of the fall. The mine manager told them he would send the timbermen over as soon as they got through where they were working and that they should go back and clean up the rocks and slate. The mine manager told Waski and Kalinski to hurry up, and when they got through to go to the other place, which was about 1200 feet distant, and clean up the fall. As soon as the timbermen finished their work in the main east entry they went over to the other fall, and the mine manager did not go with them but remained at the place in the main east entry. When the timbermen reached the other place they found Coin and Rembert at work, and they had pulled

down all the loose rock and slate they could get down, including the loose rocks on which the danger marks had been. Kalinski and Waski lit their pipes and took a smoke, and then Waski took Coin's pick and sounded the roof and said it was all right. On the trial Waski testified for the plaintiff, and said that he found the roof not very loose nor very solid but thought he could work under it after he sounded it. Coin and Rembert also sounded the roof, and testified that it was smooth and sounded solid and they found no danger. There was a supply of timbers in the room with which the roof could have been propped. In a short time after the timbermen went to work a piece of slate ten or twelve feet long, six or seven feet wide and about a half foot thick fell and killed Kalinski and injured Waski. The mine manager had not been at the place, and all he knew about the condition was from the report of the mine examiner that there had been a fall there and the place was dangerous.

The court refused to direct a verdict of not guilty at the close of the evidence, and the refusal is assigned for error. There was no allegation and there is no claim that the defendant was guilty of any negligence in permitting Kalinski to go to work as an assistant to Waski as a timberman or engaging him to do work which he thought he could do, or that there was any fault or negligence in failing to give him general instructions as to the dangers incident to the work he was employed to do. Manifestly there could be no such fault, because the timbermen were employed to make dangerous places safe, and the work was of a character to give notice to anyone of ordinary intelligence that there was an element of hazard in the employment and dangers to be guarded against. The charge was, and the claim is, that Kalinski was inexperienced in the work he was employed to do, and in this particular instance the mine manager either negligently or willfully ordered him to go to the place where there was work which he was

employed to do without giving him any warning or instruction as to the dangers incident to cleaning up the fall and instructing him how to obviate such dangers.  It was alleged that Kalinski did not know of the danger nor have equal means of knowledge with the defendant, but there was a total failure to introduce any evidence which, with all the inferences that could reasonably be drawn from it, proved, or tended to prove, the allegation.  The mine manager had not been at the place, and when the order was given knew no more about conditions there than Kalinski did.  The mine manager was not charged with any duty to inspect the place, but that duty was imposed upon the mine examiner and it had been fully and properly performed.  The mine manager knew nothing about the place, except that the mine examiner had reported a fall there and a dangerous condition which it was the duty of the defendant to make safe.  When Kalinski went to the place the roof was tested by Waski, Coin and Rembert, who all regarded it as safe to work under.  He saw what was done, and the opportunity of the defendant to know of the existing condition when he went to work was not equal to his.  There was also a failure to offer any evidence proving, or tending to prove, that the mine manager either negligently or willfully exposed Kalinski to any danger which his usual employment did not involve.  It was the duty of timbermen to work in unsafe places and make them safe, as required by the Mining act, whenever and wherever directed by the mine manager, and there was no order to perform work which Kalinski had not undertaken to do.  The mine manager was only doing his statutory duty when he sent the timbermen to clean up the fall and make the place safe, and the defendant would have been liable under the statute if he had not done exactly what he did.  There was no order given which could possibly change the relations of the parties, and all that is claimed in respect to the order is, that the mine manager told Kalinski to hurry up with

the work he was doing and go and assist in cleaning up the fall. It is not the law that a general order to do work in the usual course of the employment constitutes negligence or imposes any liability on the employer. (*Republic Iron and Steel Co.* v. *Lee,* 227 Ill. 246; *Swiercz* v. *Illinois Steel Co.* 231 id. 456.) Kalinski was neither misled by a peremptory order to do something which he would not otherwise have done nor exposed to any danger which did not constantly occur in his ordinary employment. It is a duty to warn an inexperienced person of unknown dangers before exposing him to them, but here the danger was involved in the very nature of the employment and the nature of the work notified Kalinski of the danger. He was not exposed to any unusual, unnecessary or unknown danger which he would not otherwise have encountered, by being told to hurry up with his work and assist in cleaning up the fall. The mine manager knew that the place was reported unsafe, and it is admitted that he was not required to go with the timbermen, and the evidence did not tend to prove that it would have made any difference if he had told Kalinski that he was going on dangerous work and to look out, or that such a warning would have prevented Kalinski going to work after seeing the roof sounded and pronounced safe.

On the cross-examination of the mine manager he was asked if he was well and healthy at the time and able to walk about the mine, and whether there was any reason why he could not have gone up there. The court overruled the objection, and the witness said that he was staying in the main east entry to see that it was safe for the men to go under, and was not incapacitated in any way so that he could not have gone up and seen the condition before sending the men there. The ruling gave the jury to understand that the mine manager was guilty of negligence in not going to the place and examining it before directing the timbermen to do their work, and it was serious error. The Appellate Court recognized the error but thought that it

was cured by instructions 13 and 21. We think that conclusion was wrong. The rule stated in instruction 13, that it was not necessary for the mine manager to accompany the timbermen in person and remain with them while at work, was coupled with and dependent upon the hypothesis that Kalinski was of sufficient intelligence and experience to understand the duties of his employment and that he did understand them. It was claimed that Kalinski was inexperienced and did not understand the duties and dangers of his employment, and the implication from the instruction was, that if such was the fact the mine manager ought to have gone with him and stayed with him. In the twenty-first instruction there was simply a statement that the men directed generally to do work, and doing work under a general direction, are working under the direction of the mine manager although he is not personally present, and it did not obviate the error in the ruling. The court gave instructions upon the theory that the evidence proved the mine manager guilty of willful conduct causing the death of Kalinski, and among them the fifth, stating that it would make no difference whether Kalinski was in the exercise of ordinary care, if the jury believed, from the evidence, that the defendant was guilty of the willfulness charged in the declaration. There was no evidence from which anyone could possibly infer that the conduct of the mine manager was willful. In negligence, merely, there is no purpose to do a wrongful act, and there must be some evidence which will authorize the presumption of a conscious or intentional disregard of duty or an intention to injure, in order to justify an inference of willfulness. (*Chicago, Burlington and Quincy Railroad Co.* v. *Johnson,* 103 Ill. 512; *Chicago City Railway Co.* v. *Jordan,* 215 id. 390.) The sixth instruction made no reference to the evidence, but stated that if Kalinski was ignorant of the danger and inexperienced in the work and had not equal means of knowing the danger, it became the duty of the mine manager to warn him of the

danger and instruct him to avoid it. There was no evidence that he did not have equal means with the mine manager of knowing of the danger, but the evidence showed the contrary, and the court erred in giving such instructions.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*