**Ruth Rising, by Jorgen P. Rising, Defendant in Error, v. John H. Ferris and Clark Amusement Company. John H. Ferris, Plaintiff in Error.**

### Gen. No. 24,588.

1. WORDS AND PHRASES—*"nonfeasance"; "misfeasance"; "malfeasance."* Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; malfeasance is the doing of an act which a person ought not to do at all.

2. PRINCIPAL AND AGENT, § 149*—*duty of agent to third persons.* An agent may, in some cases, owe a duty to third persons at the same time that he owes a duty to his principal.

3. PRINCIPAL AND AGENT, § 149*—*duty of agent to regard rights of others.* The common duty to regard the rights of others is none the less binding upon a person because he happens at the time to be an agent.

4. PRINCIPAL AND AGENT, § 173*—*when president and general manager of lessee of theater is personally liable for personal injuries to third persons.* The president and general manager of a lessee of a theater who has general control of the theater and its operation and makes subleases and contracts for the use of the theater auditorium, is personally liable for personal injuries to a child, taking part in the rehearsal of a play for which the theater had been leased, through burns caused by her clothing being set afire by contact with a switchboard not guarded as required by ordinance, of the condition of which defendant had knowledge.

5. PRINCIPAL AND AGENT, § 173*—*when president and general manager of lessee of theater is jointly liable with principal for personal injuries to third person.* The president and general manager of the lessee of a theater who has general control of the theater and its operation is jointly liable with his principal, the lessee company, for personal injuries received by one lawfully on the stage through coming in contact with an unguarded switchboard, of the condition of which such president knew.

6. NEGLIGENCE, § 47*—*when unguarded switchboard on theater stage is proximate cause of burns received by child.* In an action by a child to recover for burns received through her costume, which was decorated with tinsel, being set fire to by coming in contact with an unguarded switchboard at one side of the stage while she was taking part in a rehearsal for which the theater had been leased, the failure to guard the switchboard, and not the tinsel on her costume, was the proximate cause of her injury.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed December 31, 1919.

THOMAS E. D. BRADLEY and EDWIN L. WAUGH, for plaintiff in error.

HENRY N. MILLER, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This writ of error is sued out to reverse a judgment of $4,000, rendered after verdict by the Circuit Court of Cook county against John H. Ferris and Clark Amusement Company, a corporation, defendants, in an action on the case for personal injuries. Harold W. Ricker and Joseph Grein were made codefendants originally, but during the course of the trial plaintiff dismissed the suit as to them. In this court an order of severance has been entered and John H. Ferris given leave to prosecute the writ of error alone.

At the time of the accident the Clark Amusement Company held a lease of the building, known as the "Clark Theater" on North Clark street in the City of Chicago, and used it for moving picture shows and other entertainments. There was a stage at the east end of the theater, about 30 by 50 feet, and at the north side of the stage there was a marble switchboard, about 6 feet high and 4 feet wide, the bottom of which was about one foot from the floor. On the switchboard there were about 20 switches made of brass with wooden handles. These switches were used for the purpose of turning on or off various electric lights, were uncovered and carried a current of about 220 volts, and there was no guard or railing around the switchboard. John H. Ferris was president and manager of the Clark Amusement Company. As manager he had general control of the theater and its operation, paid the help, and was there every day. He leased the use of the theater auditorium to any one that he saw fit. As stated by one of the employees of the theater: "Mr. Ferris directed me in my work. * * * He was my boss. * * * I listened to Mr. Ferris. There was no one else there who had anything to do with the operation of the theater so far as I know." Joseph Grein, the original lessee, testified: "I ran the theater myself for a while, so I looked at the switchboard then. * * * I made no repairs on the building from the

time I subleased it. If any repairs were made they were made by the tenant and not by me.  *  *  *  At the time the lease was assigned to the Clark Amusement Company, there was a bar in front of that switchboard, and it sure was there while I was operating the theater." The defendant Ferris testified: "Previous to the accident I did not do anything towards having a guardrail put around the switchboard on the stage of the theater.  *  *  ·*  I knew there was a switchboard on the stage.  *  *  *  The city inspector came to the theater about once a month and suggested things that should be done. He did not suggest anything for this switchboard. There was no guardrail there when I went there."

The accident happened on the afternoon of March 6, 1916. A few days before, several ladies called on the defendant Ferris and stated they desired to lease the theater for the purpose of giving a play in which children would take part, and for certain prior rehearsals. Arrangements were made with Ferris and at the time of the accident a rehearsal for said play was in progress, and plaintiff, a girl of 11 years of age, and about 40 other children and some adults were on the stage. Plaintiff was wearing a white tarlatan dress trimmed with tinsel, and her hair was hanging down her back. She was standing near and with her back to the switchboard, and her clothing coming in contact therewith, suddenly there was a "burst of flame" and she became enveloped in flames. Her clothing and hair were burned and she suffered serious and permanent injuries. She had not been on the stage of the theater before and knew nothing about the switchboard. The defendant Ferris was present at the theater when the children and others arrived for the rehearsal, and was "in and about the building all of the afternoon," part of the time being in the office, away from the stage.

The declaration consists of four counts. The gist of the first two counts is that the defendants managed

and controlled the theater and building, that they had leased the theater to certain persons for the purpose of having certain rehearsals for an entertainment therein, or had permitted such persons to occupy the theater for such purpose, and that they negligently failed to have said switchboard protected by a guardrail or screen or other sufficient device so as to prevent persons rightfully upon the stage, under said lease or permission, from coming in contact therewith. The third and fourth counts declare upon a provision contained in the ordinances of the City of Chicago to the effect that "switchboards accessible from stage level must be protected by a standard guardrail to prevent contact with live metal parts of board," and allege the negligent failure of the defendants to comply with said provision. The ordinance referred to was introduced in evidence by the plaintiff.

At the conclusion of plaintiff's evidence, and again at the close of all the evidence, the defendant Ferris moved for a directed verdict in his favor but the motions were denied.

The main contention of counsel for Ferris is that the trial court erred in not directing a verdict in his favor, and for the reason that he, as manager and agent of the Clark Amusement Company, is not liable for nonfeasance, but only for misfeasance, and that Ferris is not shown to have been guilty of misfeasance.

It is said in *Bell v. Josselyn,* 3 Gray (Mass.) 309, 311: "Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all." In Story on Agency, sec. 308, it is said: "The agent is also personally liable to third persons for his own misfeasance and positive wrongs. But he is not in general (for there are exceptions) liable to third persons for his own nonfeasances or omissions of duty, in the course of his employment. His liability, in these latter cases, is

solely to his principal; there being no privity between him and such third persons, but the privity exists only between him and his principal.'' There are many similar statements in other textbooks and in some reported cases. Our investigation into the subject leads us to believe that such statements may be founded in part upon a *dictum* contained in the dissenting opinion of Lord Holt in the case of *Lane v. Cotten,* 12 Mod. 472, 488, wherein it is stated: ''A servant or deputy, *quatenus* such, cannot be charged for neglect, but the principal only shall be charged for it; but for a misfeasance an action will lie against a servant or deputy, but not *quatenus* a deputy or servant, but as a wrongdoer.'' We think such statements are too broad in that they seemingly fail to recognize the fact that an agent may, in some cases, owe a duty to third persons at the same time that he owes a duty to his principal, and that the common duty to regard the rights of others is none the less binding upon a person because he happens to be at the time an agent. In *Osborne v. Morgan,* 130 Mass. 102, 103, it is stated by Gray, C. J.: ''It is often said in the books, that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance, doing improperly.'' In an opinion delivered

by Garnett, P. J. in this court (33 Ill. App. 503, 507) and adopted by the Supreme Court in *Baird v. Shipman*, 132 Ill. 16, it is said (p. 18):

"He" (the agent) "must have due regard to the rights and safety of third persons. He cannot, in all cases, find shelter behind his principal. If, in the course of his agency, he is entrusted with the operation of a dangerous machine, to guard himself from personal liability he must use proper care in its management and supervision, so that others in the use of ordinary care will not suffer in life, limb or property. * * * It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common-law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable."

Mechem, in his work on Agency (2nd Ed.; sec. 1474) says:

"The agent should be held responsible for injuries caused by the condition of premises in the possession or under the control of the agent where the condition is one for which he is responsible and the injury is such as he would be liable for if he were controlling the premises on his own account. * * * For similar reasons, the agent should be held responsible for injuries caused by his neglect to keep in repair premises under his control where he is charged by his principal with the duty to repair and has the necessary means, in any case in which he would be liable for the same injury if he were controlling the premises on his own account. * * * If the agent is not in control or has neither the duty nor the power to repair, the failure to repair cannot be regarded as his act. But where these conditions are present it is difficult to see why it is not properly to be regarded as his act. It is, of course, in one sense a not-doing, a nonfeasance; but his act of control is a doing, a feasance, and his failure to properly control is a misfeasance, if any importance is to be attached to these terms. It would seem to need no argument to show that the mere not-doing of

a particular act which is in itself but a mere incident in the larger act of doing, ought not to be regarded as such a nonfeasance as will excuse the agent within any proper meaning of that term. Not all the cases, it is true, are in harmony with the rules above laid down, but these rules are believed to be sound, and to be sustained by the weight of modern authority.''

In *Baird v. Shipman, supra,* the agents for a nonresident owner, with general power to lease the premises and to make repairs, were held liable for negligently permitting a stable door to so get out of repair that the same fell from its fastenings while an expressman was delivering a load of kindling in the barn for the tenant, and so injured him that he died the next day. The evidence disclosed that the agents knew of the insecure condition of the door when they leased the premises to said tenant. In the opinion of the court it is stated (132 Ill. 20):

''Appellants remained in control of the premises until the door fell upon the deceased. There was no interruption of the causal relation between them and the injured man. They were, in fact, for the time being, substituted in place of the owner, so far as the control and management of the property was concerned. * * * When appellants rented the premises to Mrs. Wheeler, in the dangerous condition shown by the evidence, they voluntarily set in motion an agency, which, in the ordinary and natural course of events, would expose persons entering the barn to personal injury. Use of the barn for the purpose for which it was used when the deceased came to his death, was one of its ordinary and appropriate uses, and might, by ordinary foresight, have been anticipated.''

In *Lough v. John Davis & Co.,* 30 Wash. 204, an agent, who had authority from the owner of a tenement house to rent and repair the premises and also had the full control and management thereof, and who had negligently permitted the railing of a veranda 15 feet from the ground to become rotten and unsafe, was held liable for the injuries to plaintiff occasioned by the railing giving way and her falling from the

veranda to the ground. In *Campbell v. Portland Sugar Co.*, 62 Me. 552, plaintiff was injured by falling through a hole in a wharf and the general agents of a corporation (owner) who had the care and control of the wharf were held liable, equally with the owner, for having negligently permitted the hole to remain. In *Ellis v. McNaughton*, 76 Mich. 237, 242, a husband had the sole control of the erection of a building upon a lot owned by his wife, as her agent, buying the materials and hiring the workmen. One of the workmen, contrary to orders, removed a portion of the sidewalk in front of the lot. The husband, after knowledge of the removal, failed to replace the walk and make it safe for travel thereon, in consequence of which failure plaintiff was injured, and the husband, as agent, was held liable. The court quotes from Mechem on Agency (1st Ed., sec. 572) as follows:

"Misfeasance may involve, also, to some extent, the idea of not doing,—as where the agent, while engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances, does not take that precaution, does not exercise that care, which a due regard for the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual in common with all other members of society. It is the same not-doing which constitutes actionable negligence in any relation."

(See also, *Stiewel v. Borman*, 63 Ark. 30, 39; *Mayer v. Thompson-Hutchison Bldg. Co.*, 104 Ala. 611, 622; *Carter v. Atlantic Coast Line R. Co.*, 84 S. C. 546, 550; *Orcutt v. Century Bldg. Co.*, 201 Mo. 424, 447; *Hagerty v. Montana Ore Purchasing Co.*, 38 Mont. 69, 76.)

Under the law, by the weight of modern authority, and under the peculiar facts of the present case, we are of the opinion that the defendant, Ferris, is liable for the injuries sustained by plaintiff. The evidence disclosed that he had general control of the theater

and of its operation, that he made the leases or contracts for the use of the theater auditorium, that the unguarded switchboard was a dangerous mechanism to uninformed persons lawfully on the stage and in its immediate vicinity, and that he knew that the switchboard was in the position that it was. When, under the prior arrangements made, he allowed many children and others on the stage, on the afternoon in question, for the purpose of having a rehearsal for a play to be subsequently given, and on that stage there was a mechanism, dangerous because unguarded, he "voluntarily set in motion an agency, which, in the ordinary and natural course of events would expose persons," unaware of the danger and lawfully on the stage, to personal injury. By the use of ordinary foresight in placing a guard around the switchboard he could have avoided the accident. We think he was guilty of negligence which proximately caused the injuries to plaintiff.

And, under the weight of authority, he is jointly liable with the Clark Amusement Company, his principal. (2 Mechem on Agency, 2nd Ed., sec. 2011; *Republic Iron & Steel Co. v. Lee*, 227 Ill. 246, 253; *Greenberg v. Whitcomb Lumber Co.*, 90 Wis. 225, 232; *Southern Ry. Co. v. Grizzle*, 124 Ga. 735, 739.)

It is also contended that the proximate cause of the injury was plaintiff's wearing a dress trimmed with tinsel and not the failure to erect a guardrail around the switchboard. We do not think that the evidence supports this contention. Furthermore, the wearing of tinsel by children in plays in which they take part is common, and not ordinarily dangerous. The dangerous agency in this case was the unguarded switchboard.

It is further contended that the trial court erred in refusing certain instructions offered by the defendant Ferris. No useful purpose will be served in setting forth the instructions and commenting on the points made as to each. Suffice it to say that we have ex-

amined the refused instructions and are of the opinion that, in view of the facts disclosed by the evidence and in view of the given instructions, no error was committed by the court which warrants a reversal of the judgment. No point is made that the verdict and judgment are excessive.

For the reasons indicated the judgment is affirmed.

*Affirmed.*