# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

M. R. SULLIVAN, Admr., Defendant in Error, *vs.* THE CORN PRODUCTS REFINING COMPANY *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1910.*

1. MASTER AND SERVANT—*when question of extent of danger incident to obeying order is one of fact.* Where the evidence does not indicate that the servant was aware of the danger incident to obeying a certain order of his foreman, the question whether the danger attending the execution of the order was such that a man of ordinary prudence, having the knowledge of the situation that the servant possessed, would have incurred it, is a question of fact properly submitted to the jury.

2. EVIDENCE—*party cannot testify for co-defendant in personal injury suit by administrator.* The foreman whose alleged negligent command is claimed to have resulted in a servant's death may be made a co-defendant with the master in a suit by the administrator for damages, and in such case the foreman cannot testify in behalf of his co-defendant, even though he offers to waive any benefit to himself of such testimony.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding.

THOMAS STALLINGS, and WARNOCK, WILLIAMSON & BURROUGHS, (JOHN A. BLOOMINGSTON, of counsel,) for plaintiffs in error.

D. J. SULLIVAN, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a writ of error to review the judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Madison county for the sum of $1860 in a suit brought against plaintiffs in error to recover for the death of Charles Metcalf.

Plaintiff in error the Corn Products Refining Company on September 5, 1907, was operating a plant at Granite City, in said Madison county, manufacturing certain food products, and the other plaintiff in error, George Hendricks, was foreman of the steam-fitters in that plant. In one of the departments (the "feed house") were located ten machines (known as "dryers") used to dry grain. The one in which Metcalf was injured was cylindrical in shape, about twenty-five feet long and six feet in diameter, one end being elevated higher than the other. The machine was constructed of metal, except that in the front or lower end there was a wooden head. Through this cylinder ran steam pipes, which connected with a condensing chamber at the lower end. There was an iron head in the cylinder at the front end of the condensing chamber, and between the iron head and the wooden head was a compartment the diameter of the cylinder and about two feet in length. The water from steam which condensed in the chamber was carried off by means of a siphon pipe. When in operation the dryer was revolved and the grain passed through it from the upper to the lower end. In the wooden head was a door about eighteen inches square. In the iron head was an opening about six by nine inches, leading into the condensing chamber, which was covered by a metal plate called the "man-head," fastened by means of bolts. A pet-cock

was connected with the escape from the siphon pipe. Upon opening it, water, air or steam from the condensing chamber would come out, the cock being intended to show the condition inside the chamber. Deceased was twenty-six years of age at the time of his death and for four or five days previous had been working for the company as a steam-fitter. During the three weeks prior to that time he had been working for the company as a machine man. About a year previous he had been employed by the same company for several months as a pipe-fitters' helper. During his first employment the dryer here in question was not in the plant. On the day the deceased was injured the foreman of the feed house informed plaintiff in error Hendricks that the dryer in question was not working right. The latter thereupon ordered Metcalf and two others to repair it. Under the directions of Hendricks the dryer was shut down and the pet-cock connecting with the condensing chamber was opened, cold water coming out. Hendricks said that was the condition he wanted. He thereupon ordered Metcalf to go into the compartment between the wooden and iron heads at the lower end of the dryer and unscrew the iron man-head opening into the condensing chamber. While Metcalf was in this compartment the light which he was using went out and another was sent for, but in the meantime he proceeded to unscrew the bolts which held the man-head, the foreman, Hendricks, standing just outside. There is testimony that Hendricks, after Metcalf's light went out, said, "Here, you wait a bit," and sent for another light. It is clear, however, that Metcalf continued his work with Hendricks' knowledge. Before the light was obtained Metcalf had succeeded in removing the bolts and unloosing the man-head. The hot water thereupon rushed from the condensing chamber in such quantities that before he was able to escape through the small door in the wooden cylinder head he was fatally scalded and died the next day.

At the close of the introduction of the evidence in favor of defendant in error, and again at the close of all the evidence, an instruction was offered directing a verdict on behalf of the plaintiffs in error. These instructions were refused.

The chief contentions of plaintiffs in error are that the evidence does not sustain the verdict and that the defendant in error's intestate assumed the risk of being injured. There was but one count in the declaration. It averred with particularity that Metcalf was working under the orders of his foreman in going into the compartment between the wooden and iron heads to remove the man-head; that he was not advised as to the dangers incident to such work, and that such dangers were unknown to him and not discoverable by means of the exercise of ordinary care. The question of assumed risk is usually one of fact and not of law. The evidence is not of such a nature as to indicate that defendant in error's intestate was aware of the dangers incident to the removal of the iron man-head under the conditions stated. The question whether the execution of the order of the foreman was attended with such danger that a man of ordinary prudence, having the knowledge of the situation that Metcalf had, would have incurred the danger incident to the removal of the man-head was one of fact and was properly submitted to the jury. *Lee* v. *Republic Steel Co.* 241 Ill. 372; *Springfield Boiler Co.* v. *Parks,* 222 id. 355.

Plaintiffs in error contend that the single instruction given for defendant in error was liable to mislead the jury as to the question of ordinary risks incident to employment assumed by a servant. As we understand their contention, it is that this instruction would lead the jury to think that under the law the servant assumes only such risks as are open and obvious and could be known by the exercise of ordinary care; that there might be ordinary risks which are not open and obvious. The instruction is not open to

any such construction. It states the law fairly in accordance with the rule laid down by this court. *Chicago and Alton Railway Co.* v. *Bell,* 209 Ill. 25; *Kenny* v. *Marquette Cement Co.* 243 id. 396.

The further contention is made that the trial court erred in refusing to allow George Hendricks to testify in behalf of his co-defendant, the Corn Products Refining Company, the statement being made by his counsel at the time he was offered as a witness that his testimony was to be considered only in behalf of the Corn Products Refining Company and not on behalf of the proposed witness himself. The defendant in error was suing as administrator. Section 2 of chapter 51, on evidence, says that "no party to any civil action, suit or proceeding * * * shall be allowed to testify therein of his own motion, or in his own behalf, * * * when any adverse party sues or defends" as administrator. This court has held that under such a state of facts a defendant cannot testify in his own behalf or be called as a witness by a co-defendant. (*Lowman* v. *Aubery,* 72 Ill. 619; *Bardell* v. *Brady,* 172 id. 420.) It is argued, however, that Hendricks was not a necessary party, and that he was made a party expressly to prevent his testifying for the benefit of his co-defendant. Defendant in error had a right to make Hendricks a defendant. (*Republic Iron Co.* v. *Lee,* 227 Ill. 246; *Peirce* v. *Walters,* 164 id. 560.) The purposes for which he was made one can have no bearing. (*Deere* v. *Chicago, Milwaukee and St. Paul Railway Co.* 85 Fed. Rep. 876; *Moore* v. *L. A. Iron and Steel Co.* 89 id. 73.) It is clear that Hendricks was not a competent witness in his own behalf, yet had he been allowed to testify he would necessarily have had the benefit of his own testimony, notwithstanding his offer to waive that benefit. The court did not err in its ruling as to this witness.

We find no reversible error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*