GIRDEN F. LINN *et al.* Appellees, *vs.* JAMES E. LINN *et al.* Appellants.

*Opinion filed February 21, 1914.*

1. DEEDS—*a deed delivered to third party for grantee must pass beyond the grantor's control.* A deed delivered by the grantor to a third person for delivery to the grantee after the grantor's death may be a valid conveyance, but it is indispensable to the validity of the conveyance that the deed, upon delivery to the third party, shall pass absolutely beyond the grantor's dominion and control.

2. SAME—*depositary has no authority to deliver deed if grantor dies before parting with control.* If the grantor places the deed in the hands of a depositary merely as a convenient place of deposit, still intending to retain control over it, the grantee acquires no rights while the deed is so subject to recall, and the depositary has no authority to deliver it to the grantee if the grantor dies without having parted with his control over it.

3. SAME—*circumstances of delivery to a depositary must show the grantor intended the deed to become operative at once.* The circumstances of the delivery of a deed to a depositary must show that the grantor intended the deed to presently become operative, as it must take effect, if at all, upon execution and delivery, and while the grantor's intention may be evidenced by words or acts,

or both, yet, however manifested, it must show that no control was reserved or intended to be reserved by the grantor.

4. SAME—*when intended disposition of property is ambulatory.* If the grantor delivers deeds to a depositary intending that they shall be delivered to the grantees provided the grantor makes no other disposition of the property before his death, the intended disposition of the property is ambulatory until the death of the grantor, and can only be effected by an instrument in writing in conformity with the Statute of Wills.

5. SAME—*what shows that grantor did not intend to part with control over deeds.* Where the grantor, after being advised that he would have the right to withdraw deeds from the hands of a depositary at any time if he saw fit to make other disposition of the property, executes six warranty deeds, containing no reservation of any life estate in the grantor, which he places in envelopes marked from 1 to 6, each indorsed with the name of the grantor and the words, "This envelope not to be opened during my life," and hands the envelopes to a banker with the request that he put them away and keep them for him, the facts that the grantor thereafter sold the land covered by two of the deeds and appropriated the proceeds of the sale, and that he continued in the possession of the other land and received the rents and profits, show that he did not intend to part with control over the deeds or that they were to presently become operative.

6. SAME—*when presumption of delivery of deed of voluntary settlement cannot prevail.* While the law indulges a stronger presumption of delivery in case of a deed of voluntary settlement than in case of a deed of ordinary bargain and sale, yet there can be no presumption of delivery where the proof shows the grantor did not intend to make a delivery.

7. SAME—*when the defendants cannot testify for each other.* Where a bill for partition is filed by persons claiming as heirs, the defendants are incompetent to testify in their own behalf with reference to transactions and statements of the complainants' ancestor just prior to his death, which are relied upon by the defendants as showing a symbolical delivery of deeds to them, and being incompetent to testify in their own behalf neither is competent to testify in favor of the other as to such transactions and statements.

8. SAME—*what does not show a symbolical delivery of deeds.* The fact that after the death of the grantor one of the grantees presented to the depositary a list made by the grantor describing the six deeds which the grantor had left with the depositary, does not create the presumption that the list was delivered to the gran-

tee by the grantor before his death and was a symbolical delivery of the deeds.

9. SAME—*execution of will, omitting land described in deeds, does not show intention that deeds should presently pass title.* · The mere fact that the grantor, after executing six deeds and delivering them to a depositary to keep for him, executes a will in which no reference is made to the land described in the deeds, does not show he intended the title to pass to the grantees in his lifetime.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

A. C. NORTON, and F. A. ORTMAN, for appellants.

KERR & LINDLEY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Livingston county granting the prayer of a bill filed by appellees, Girden F. Linn and Fidelia E. Crandall, for the partition of certain lands described and to set aside certain deeds as clouds upon their title. The land sought to be partitioned belonged to James H. Linn in his lifetime, and consisted of 320 acres situate in Livingston county. He had six children, and the bill alleges that on May 3, 1909, he executed warranty deeds purporting to convey the said 320 acres of land to his children, the deeds purporting to convey to each child a separate parcel. He died about November 15, 1911. The bill alleges the deeds executed by him to his children were never delivered but were deposited by him with a custodian for safe keeping, he reserving the right to take them, or any one of them, up at any time he desired; that the grantees in the deeds had secured them from the custodian and some of them had placed their respective deeds on record. The bill was filed by Girden F. Linn and Fidelia E. Crandall, two of the children of James H. Linn, and these, with four other children, James E. Linn, Laura Clark, Orin P. Linn and Ida L. Reynolds,

were the only children and heirs-at-law surviving James H. Linn. Said last named four children, a tenant occupying the land, and Laura Linn, widow of James H. Linn, whom he married after executing the deeds sought to be set aside, were made defendants to the bill. None of the defendants answered the bill except James E. Linn and Laura Clark. They answered separately, denying that the deeds to them were never delivered and averring that they were delivered to John C. Culbertson in escrow, to be delivered to the grantees after the death of the grantor, and that they legally and lawfully obtained possession of said deeds according to the directions of James H. Linn and lawfullly placed them on record. The answers denied the widow was entitled to dower. The master in chancery to whom the cause was referred to take the testimony and report his conclusions of law and fact, reported recommending a decree setting aside the deeds on the ground that they were never delivered by the grantor and for the partition of the premises subject to the widow's dower, as prayed in the bill. The chancellor overruled exceptions of James E. Linn and Laura Clark to the report and entered a decree setting aside the deeds and appointing commissioners to make partition and assign dower to the widow. James E. Linn and Laura Clark have prosecuted this appeal from that decree.

The proof shows that on May 3, 1909, James H. Linn executed six deeds purporting to convey to his children, in separate parcels, all his real estate in Livingston county. The deeds to James E. Linn and Laura Clark were for eighty acres each, to Orin P. Linn fifty acres, to Girden F. Linn thirty acres, and to Fidelia E. Crandall and Ida L. Reynolds each forty acres. At the same time he executed a deed to Girden F. Linn for a lot in Chicago but did not describe in that deed the lot he owned there, and deeds to Fidelia E. Crandall and Ida L. Reynolds for eighty acres, each, in the State of Nebraska. The deeds were prepared by R. W. Ames, a minister of the gospel. Ames testified

261 — 39

that a day or two before the deeds were prepared James
H. Linn came to him and said he wanted to prepare his
property for distribution among his children and desired to
know the best way to do it.   He had planned making a
will, but Ames advised him a will would not be very safe,
and suggested making the distribution by deeds and deliv-
ering them in escrow as a better plan.   A few days after
this conversation Linn again called upon the witness and
said he had decided to adopt the plan the witness recom-
mended, whereupon the deeds were prepared.   Ames tes-
tified Linn inquired if he placed the deeds in the hands
of someone for safe keeping whether he could withdraw
them in case he decided to sell the land or a part of it.
The witness told him he could do that and dispose of the
property and do as he pleased with what he disposed of.
Linn wanted the witness to keep the deeds, to be delivered
after his death, but the witness advised that as he was un-
settled and moved frequently he deliver them to someone
else, and he suggested John C. Culbertson, a banker, as a
proper man to leave them with.   The deed to each grantee
was placed in a separate envelope, numbered from 1 to 6,
and on each envelope was indorsed, "James H. Linn.—This
envelope not to be opened during my life."   At the same
time the deeds were prepared the witness prepared a list
or paper containing the names of the respective grantees
and a description of the land contained in the deed to each
grantee, and these descriptions were numbered from 1 to 6,
to correspond with the numbers on the envelopes contain-
ing the deeds.   This list the witness called "the escrow of
the deeds," and it showed who the grantees were and the
description of the land conveyed in the deed in each of
the envelopes.   For instance, No. 1 in the list was Girden
F. Linn and the description of the land in the deed to
him, and the envelope marked No. 1 contained the deed
to Girden F. Linn.   This list was kept by James H. Linn.
John C. Culbertson, the person with whom the deeds were

left by James H. Linn, testified that when Linn handed him the bunch of envelopes containing the deeds he asked the witness "to put them away for him and keep them for him," and that was all he said. The deeds were all the statutory form of warranty deeds, containing no reservations of a life estate in the grantor or any other conditions. James H. Linn had secured the Nebraska land some years before from his son Orin P. Linn, but the deed from Orin P. Linn to his father had never been recorded. After the execution of the deeds to his children, which included the Nebraska land, and after they were deposited with Culbertson, James H. Linn sold the Nebraska land, but instead of making the deed to the purchaser himself he had it made from Orin P. Linn, in whom the record title was. James H. Linn received and appropriated the consideration paid by the purchaser for the land. He retained the possession and control of the Illinois land and paid the taxes thereon and received the rents and profits therefrom until his death.

The following propositions have been settled by repeated decisions of this court: A deed delivered by a grantor to a third person for delivery to the grantee upon the grantor's death may be a valid conveyance, but it is indispensable, in such cases, to the validity of the conveyance, that the deed, when delivered to the third party, shall pass absolutely beyond the dominion and control of the grantor. If there is any reservation of control of the deed by the grantor,—if he merely places it in the hands of a third person as a convenient place of deposit, still intending to retain control over it himself,—it is not a valid delivery and conveys no title. So long as the deed in the hands of the depositary is subject to recall by the grantor the grantee acquires no right under it, and if the grantor dies without parting with control over the deed no one has authority afterwards to deliver it to the grantee. The circumstances of the delivery to the depositary must clearly

show the grantor intended the deed to presently become operative. It must take effect upon execution and delivery, if at all. The intention of the grantor may be evidenced by words or by acts, or by both words and acts, but, however shown, it must appear that no control of the deed was reserved or intended to be reserved by the grantor after delivering it to the depositary. *Stinson* v. *Anderson,* 96 Ill. 373; *Byars* v. *Spencer,* 101 id. 429; *Cline* v. *Jones,* 111 id. 563; *Hayes* v. *Boylan,* 141 id. 400; *Provart* v. *Harris,* 150 id. 40; *Shults* v. *Shults,* 159 id. 654; *Spacy* v. *Ritter,* 214 id. 266; *Russell* v. *Mitchell,* 223 id. 438; *Weigand* v. *Rutschke,* 253 id. 260; *Hoyt* v. *Northup,* 256 id. 604; *Thurston* v. *Tubbs,* 257 id. 465; *Kavanaugh* v. *Kavanaugh,* 260 id. 179.

There can be no doubt from the testimony that James H. Linn intended that if he died without withdrawing the deeds from Culbertson's possession and disposing of the land it should go to the grantees in the deeds, but this intention could not prevail if he retained any dominion or control over the deeds and intended to reserve the right to make any other disposition of the land he saw fit to make during his lifetime. Such an intended disposition of property is ambulatory until the death of the grantor, and can only be effected by an instrument in writing in conformity with the statute for the disposition of real estate by will. (*Spacy* v. *Ritter, supra; Cline* v. *Jones, supra; Hayes* v. *Boylan, supra.*) It seems entirely clear from the words and acts of James H. Linn that he did not intend, when he executed and delivered the deeds to Culbertson, to lose control over them or the right to make any other disposition of the property he saw fit to make during his lifetime. When the witness Ames advised him to make the deeds and deposit them with some person for safe keeping until his death, he inquired of the witness whether he would have the right to withdraw the deeds in case he should desire to dispose of the land or any part of it, and

was advised that he could; that he could dispose of the property and do what he chose with it. Culbertson testified that when Linn left the deeds with him for safe keeping, all he said was for Culbertson to put them away and keep them for him, (Linn.) This testimony not only fails to show any intention of Linn that the deeds should become presently operative and pass beyond his dominion and control, but it does show a contrary intention. That he intended to retain control of the deeds and the disposition of the land during his lifetime is further evidenced by the fact that he did sell and dispose of the land described in two of the deeds and appropriate to himself the consideration received for it. While it is true, as contended by the appellants, that the law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale, no such presumption can prevail where the proof shows the grantor did not intend to make a delivery. (*Hoyt* v. *Northup, supra.*) The testimony of the witnesses Jackson and Corbett, that James H. Linn told them he had made deeds conveying his land to his children because he feared if he made a will it would get into the courts, and while he had deeded to some of his children more than he had to others this was because he had helped some of his children considerably and others he had not helped at all, does not prove that he had made a delivery of the deeds so that they became operative and divested him of the right to recall them and make some other disposition of the land.

Appellants were introduced as witnesses in their own behalf before the master, and appellees, who were complainants in the bill, objected to their competency. The master heard their testimony subject to the objection, but before the taking of all the testimony was concluded he announced that in his opinion the witnesses were incompetent, under section 2 of the Evidence act, to testify to any transactions occurring prior to the death of James H. Linn.

The substance of the material parts of the testimony of James E. Linn was, that his father died on November 15, 1911, in Clearwater, Florida; that he and his sister, Laura Clark, were with him at the time and had been for two months; that about six weeks before his father's death, his father, while lying in bed, directed the witness to a drawer in a bureau in the room, where he would find some keys, and told the witness to take the keys, go up-stairs to a drawer named and get a paper which the father said was a list of the deeds he had made; that the names were on the paper and were numbered; that the deeds were in Culbertson's bank, and they were numbered. The witness testified his father said, "When I am dead take them back to Culbertson and present them and get your deeds and take them to Pontiac and have them recorded, and that will settle it." The witness testified he went up-stairs but could not find the paper, so he brought the drawer and its contents down-stairs to his father; that his father took the list out and handed it to him; that after the death of his father the witness presented the paper to Culbertson, who at first refused to deliver him the deeds; that after some talk between the parties Culbertson called up someone at the county seat by telephone, and later gave witness the deed corresponding in number with his name on the list but refused to give him the deed to Laura Clark; that she called later and got it herself. Laura Clark substantially corroborated the testimony of her brother James as to the delivery of the paper to him by their father. After the master had ruled that appellants were incompetent witnesses their counsel offered the testimony of James E. Linn in behalf of the other defendants, not including himself, and the testimony of Laura Clark in behalf of the other defendants, not including herself. The master in his report stated that in arriving at his conclusions he had considered the testimony of appellants as incompetent for all purposes. The bill was filed by complainants as heirs of James H. Linn,

claiming an interest in and the right to partition of the land which appellants claimed in their answer to own as purchasers. It is clear that under section 2 of the act on evidence appellants were not competent, upon their own motion, to testify in their own behalf as to anything occurring prior to the death of James H. Linn. They were both called to testify to the same transactions and statements of James H. Linn, which their counsel claim amounted to a "symbolical delivery" of the deeds at that time. If the occurrence they testified to was of any importance, neither could testify for the other without also testifying for himself or herself. It would be a violation of both the letter and the spirit of the statute to hold that notwithstanding their incompetency as witnesses in their own behalf each was competent to testify for the other. The master and the chancellor were clearly right in holding they were not competent to testify to anything that occurred before the death of James H. Linn. *Sullivan* v. *Corn Products Refining Co.* 245 Ill. 9; *Lowman* v. *Aubery,* 72 id. 619; *Bardell* v. *Brady,* 172 id. 420.

It is further contended by appellants that, leaving out of consideration their testimony as to what occurred before the death of their father, the fact that James E. Linn produced the list of deeds to Culbertson after the death of his father creates the presumption that the list was delivered to him by his father in his lifetime and should be treated as a symbolical delivery of the deeds. In *Walls* v. *Ritter,* 180 Ill. 616, George M. Simms executed his will and four deeds. He placed them in a sealed envelope, and after his death William Walls, the grantee in one of the deeds, and another party, went to the bank and received from the banker a private box which had been left in his custody by Simms. The box was taken to a back room, where Walls produced a key and unlocked the box, the envelope was taken from it, was opened by the banker and found to contain the deeds and will. Walls was a grandson of

deceased, and testified, over objections to his competency, that the key was delivered to him by his grandfather more than two months before his death and had remained in his possession until the box was opened at the bank. In its opinion the court said it was contended that the delivery of the key was a symbolical delivery of the deed. The court held the witness was incompetent, but said if the testimony was treated as competent it wholly failed to prove a delivery of the deed. In *Hawes* v. *Hawes,* 177 Ill. 409, the grantor delivered the key to his safety deposit box to the grantee, with directions to her to get the grantor's will in case of his death. After the death of the grantor the grantee opened the box and found in it an enevelope addressed to her, which contained a deed to her, and a paper, signed by the grantor, directing the grantee to record the deed upon opening the envelope. The court held this was not sufficient to show the grantor intended the title to pass presently to the grantee during the grantor's lifetime, and said: "There was neither act nor declaration of delivery nor intention to deliver, but the only intention apparent was that the grantee should obtain possession when she should open the box after his death." What was there said would apply to this case, even if the testimony of appellants had been competent. The testimony of appellants that James H. Linn gave James E. Linn the list of the deeds in Culbertson's possession and told him to take the list to Culbertson when he was dead, present it and get the deeds, no more indicates that James H. Linn intended by that act that the title should presently pass to the grantees before his death than did the facts before the court in *Hawes* v. *Hawes, supra.* Certainly the fact that James E. Linn was in possession of the list after the death of his father would not be sufficient to authorize holding the title had passed by the deeds.

In October, after the deeds were executed in May, James H. Linn executed a will but made no disposition

therein of the land in controversy. This is not sufficient to show that he intended the title to pass presently, and during his lifetime, to the grantees in the deeds. *Hawes* v. *Hawes, supra; Lange* v. *Cullinan,* 205 Ill. 365.

We are of opinion the decree is sustained by both the law and the evidence, and it is affirmed.

*Decree affirmed.*