**M. D. Holcomb, Appellee, v. Harry B. Magee and Robert A. Hanna, Appellants.**

**Gen. No. 6,748.**

1. PLEADING, § 100*—*what admitted by joint plea of general issue in action for malpractice.* In an action against two physicians to recover for injuries alleged to have been received through the malpractice of defendants in operating an X-ray machine in treating plaintiff, to which defendants entered a joint plea of not guilty, *held* that defendants by so pleading admitted that both were possessed of the machine in question and operated it by electricity through a powerful electric current and that one defendant, at the direction and under the supervision of the other, placed plaintiff in conjunction with the machine for examination at various times, as alleged in the declaration, and defendants could not contend that each was liable for his own negligence only and not that of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Holcomb v. Magee et al., 217 Ill. App. 272.

other nor that the defendant who ordered the examination but was not present at it could not be held liable for the injury.

2. EVIDENCE, § 426*—qualifications of X-ray expert. In an action against two physicians to recover for injuries alleged to have been received through their malpractice in operating an X-ray machine in examining plaintiff, it is proper to permit one who is familiar with the type of machine and its use and a specialist in X-ray work and has treated many patients to testify as an expert, even though he is not acquainted with medical and surgical practice in the city, where the injury was received, it not appearing that the type of machine in question worked differently in such city than elsewhere.

3. EVIDENCE, § 410*—when expert may testify as to cause of physical condition. In an action against two physicians to recover for personal injuries alleged to have been received through their malpractice in operating an X-ray machine in examining plaintiff, it is proper to permit a witness who has qualified as an expert in the use of such machines and the treatment of patients with them to state, in answer to hypothetical questions, what was the cause of the condition which he found on plaintiff's back and whether or not the injury was the result of an X-ray burn.

4. PHYSICIANS AND SURGEONS, § 15*—when negligence shown in operation of X-ray machine. In an action against two physicians to recover for personal injuries alleged to have been received through defendants' malpractice in conducting an X-ray examination of plaintiff, where it appears that plaintiff was severely burned, though assured by the defendant operating the machine that he would not be, that the machine was out of order and the operator knew it and an expert testifies that a type of machine such as that employed would not burn a patient when used with ordinary skill, such evidence establishes that plaintiff was burned by reason of a lack of ordinary care in the operation of the machine.

5. PHYSICIANS AND SURGEONS, § 14*—when jointly liable. In an action against two physicians to recover for personal injuries alleged to have been received through defendants' malpractice in the manner of making an X-ray examination of the plaintiff, to which defendants entered a joint plea of not guilty, defendants held jointly liable under the admissions arising from the state of the pleadings coupled with the oral proofs.

6. EVIDENCE, § 169*—when declaration of one of two defendants in absence of other, admissible. In an action against two physicians to recover for personal injuries alleged to have been caused by defendants' malpractice, to which defendants entered a joint plea of not guilty, statements made by one defendant in the absence of the other are competent evidence, at least against the defendant making them.

7. DAMAGES, § 211*—*when instruction permitting recovery for future suffering proper.* In an action to recover for personal injuries alleged to have been caused by defendants' malpractice, where the declaration charges that the injuries were permanent and the proof shows that they have continued up to the time of the trial and are likely to continue for several years in the future, an instruction permitting a recovery for future suffering, if any, is proper.

8. INSTRUCTIONS, § 126*—*refusal of abstract proper.* An instruction which states an abstract proposition of law is properly refused.

9. APPEAL AND ERROR, § 1561*—*when refusal of instruction harmless.* The refusal of an instruction is not ground for reversal where such instruction was embodied in another given at the same party's request.

10. INSTRUCTIONS, § 47*—*when properly refused as deciding facts.* An instruction deciding a question of fact is properly refused.

11. DAMAGES, § 145*—*when verdict for personal injuries not excessive.* In an action to recover for personal injuries alleged to have been received through defendants' malpractice in operating an X-ray machine, whereby plaintiff was burned, a verdict for $6,000 is not excessive where the evidence, though showing that plaintiff's earning capacity has not been reduced by the injury, shows that there was an open sore on plaintiff's back nearly continuously during the 2 years between the injury and the time of the trial, that the sore has been constantly discharging and sloughing off and adhering to his clothing, that it healed up but opened again, that he suffered great pain and also from fatigue, that his back is weak and he cannot walk a great distance and that he will suffer the effects of the injury for several years in the future.

12. EVIDENCE, § 14*—*depreciation in value of money judicially noticed.* In considering whether or not a verdict for $6,000 personal injuries is excessive, the court will take judicial notice that, because of the depreciation of the currency, the high cost of living or some other reason, such verdict is of no more intrinsic value than $3,000 would have been before the European War.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed March 9, 1920.

ROBERT J. FOLONIE, JACK, IRWIN & JACK and McROBERTS & MORGAN, for appellants.

WEIL & BARTLEY, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Dibell delivered the opinion of the court.

M. D. Holcombe sued Dr. Harry B. Magee and Dr. Robert A. Hanna, in an action on the case for malpractice and filed a declaration containing three counts, to which defendants pleaded a joint plea of not guilty. There was a jury trial. At the close of plaintiff's evidence each defendant made a separate motion to exclude all the evidence and to find that defendant not guilty. Those motions were denied, defendants rested without offering any evidence, and plaintiff had a verdict assessing him damages at $6,000. Defendant Hanna made a separate motion for a new trial and both defendants made a joint motion for a new trial. Those motions were denied. Defendants moved in arrest of judgment and that motion was denied. Plaintiff had judgment on the verdict and defendants appeal.

The first count of the declaration charged generally that defendants were exercising the profession of physicians and surgeons and plaintiff retained and employed them as such for reward to attend and treat him for a certain malady from which he was then suffering, and defendants accepted such retainer and employment and entered upon the treatment of plaintiff and so unskilfully and negligently conducted themselves in that behalf that through their want of skill and care said malady was greatly increased and aggravated and the back and hips of plaintiff were burned, lacerated and permanently injured and plaintiff suffered great and unnecessary anguish and became greatly disordered and weakened and so remained from thence hitherto and suffered great pain and was hindered from transacting his affairs; that such injuries are permanent and plaintiff will in the future continue to suffer pain therefrom, and will be hindered in the respects aforesaid, and has been obliged to pay and incur liability to pay large sums of money

in endeavoring to be cured of the said injuries and will be compelled to expend other sums in the future on account thereof. The second count contained like allegations, made more specific, and it averred that the plaintiff retained and employed defendants as physicians and surgeons to examine, attend and treat him; and it averred that defendants were then and there possessed of a certain mechanical apparatus known as an "X-ray machine," by which the interior of a person can be examined for the purpose of determining his ailment and treating him therefor; that the same is operated by means of electricity and a powerful electric current, and the rays therefrom are very powerful; that Magee at the direction and under the supervision of Hanna placed plaintiff in conjunction with said machine and submitted him therewith to X-ray examination and treatment by means thereof; that said apparatus was out of repair to such an extent and in such a defective condition that when a patient, such as plaintiff, was placed into conjunction with the same and subjected to said rays, his body was liable to and would be burned and injured; that defendants knew this condition of the machine, or should have known it in the exercise of ordinary care, and plaintiff did not know it; that while plaintiff was in the exercise of due care for his own personal safety, defendants negligently and recklessly submitted plaintiff to the rays of said machine and by means of said negligence the back, hips and other parts of the body of plaintiff were burned, lacerated, inflamed and permanently injured, and plaintiff suffered great and unnecessary anguish and distress and became greatly disordered and weakened in body and so remained from thence hitherto, during all of which time he suffered great pain and was hindered from transacting his affairs; that such injuries are permanent and plaintiff will continue to suffer pain therefrom and be hindered in the respects aforesaid, and has ex-

pended and will expend large sums in endeavoring to be cured of said injuries. The third count was like the second, and it averred that Magee, under the direction and supervision of Hanna, placed plaintiff upon and in conjunction with said machine and submitted him to X-ray examination and treatment.

The parties disagree as to what, if any, allegations of the declaration were admitted by defendants by their filing only a joint plea of not guilty. In *McNulta v. Lockridge*, 137 Ill. 270, a suit against a second receiver of a railroad for injuries inflicted while the first receiver was operating the road, and where the general issue alone was pleaded, it was held that this was an admission of the character and capacity in which the defendant was sued and also that at the time of the injury Cooley was receiver by appointment of court, as alleged in the declaration, and was then in possession of and operating said railroad as receiver, and that the employees operating the trains on said road were Cooley's servants as receiver, and that on the date named in the declaration Cooley resigned that office and the resignation was accepted and the court appointed McNulta as such receiver and that he qualified and entered upon his duties as such receiver. In *Illinois Life Ass'n v. Wells*, 200 Ill. 445, there was an allegation in the declaration that defendant had been organized under a different name and had changed that name to Illinois Life Association, and it was argued that the cause should have been taken from the jury because there was no evidence tending to prove the change of name. The court held that the plea of the general issue admitted the capacity in which the defendant was sued, and admitted the change of name and the assumption of liabilities as alleged in the declaration. In *Pennsylvania Co. v. Chapman*, 230 Ill. 428, the declaration alleged that "the Pennsylvania Company operated the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company" when appellant was

injured. It was held that by filing only the general issue, appellant conceded that at the time of the injury it was operating the particular line of road mentioned in the declaration and that the operators in charge of the train were its servants and employees. In *Chicago Union Traction Co. v. Jerka,* 227 Ill. 95, the *McNulta* case was approved and followed. The appellant there contended that the injury sued for was occasioned by a car belonging to the Chicago Consolidated Traction Company, and that plaintiff had not proved its allegation that the defendant owned and operated the street railway tracks, electric motors and other appliances thereunto belonging. It was held that under the plea of the general issue plaintiff was not required to offer proof in support of those allegations, and the *McNulta* and other cases are there relied upon. *Winn v. Cleveland, C., C. & St. L. Ry. Co.,* 239 Ill. 132, was a suit against that company and the Cairo, Vincennes & Chicago Railway Company in which the defendants pleaded only the general issue. There was an allegation that the former company owned and the latter company operated the railroad upon which the accident in question occurred. It was held that the only plea being the general issue, the character in which the defendants were sued was not put in issue. In *Brunhild v. Chicago Union Traction Co.,* 239 Ill. 622, a personal injury case, the company contended that there was no evidence that it was in possession and operation of the car that caused the injury. The court held that under the plea of not guilty the ownership and operation of the instrumentalities that caused the injury were not in issue. The court adhered to its decision in the *Jerka* case. The cases thus far considered are against a corporation or corporations, and appellants here contend that the principle so decided only applies to cases where a corporation is defending. *Carlson v. Johnson,* 263 Ill. 556, was a personal injury suit against individuals as well as against the City of

Chicago, and all defendants were dismissed out of the case except John B. Johnson, and plaintiff had a verdict against him, so that the case in the Supreme Court was between individuals. The case was tried under the general issue. It was reversed because the court refused leave requested by defendant before the trial to file a special plea. At the trial the court refused to permit appellant to prove that at the time of the injury he was not in possession and control of the building, and that the persons employed thereon were not in fact his agents and employees. The Supreme Court reviewed some of the cases above cited and held that the court did not err in refusing to admit that proof, because said allegations were impliedly admitted where the only plea filed is the general issue. Our attention is not called to any decision of the Supreme Court modifying the rules above stated. These decisions have been followed and applied in many Appellate Court cases. We reviewed some of the cases and applied the rules above stated in *Carr v. United States Silica Co.*, 153 Ill. App. 511, and also in *Thomas v. Anthony*, 179 Ill. App. 463, which latter was a case between natural persons. We therefore conclude that, by the state of the pleadings, it is admitted that the defendants were both of them possessed of the X-ray machine in question and were operating it by means of electricity with a powerful electric current, and that Magee at the direction and under the supervision of Hanna placed the plaintiff in conjunction with said machine for the purpose of examination and treatment on the various occasions mentioned in the declaration. This disposes of the contention here made by defendants that each of them is liable only for his own negligence and not for that of the other, and that Hanna cannot be liable because he was not personally present when the burning was inflicted.

Though appellee relied upon this rule, he also of-

fered some evidence tending to the same result. He proved that he first went to Dr. Cutter for some internal ailment and that Cutter was an assistant to Hanna and took him to Hanna, and that plaintiff then applied to Hanna for a supposed stomach trouble, to see what Hanna could do for him; that Hanna advised him that it was a bad appendix that was troubling him and advised that he be operated upon for appendicitis; and that appellee told him that he wanted him, Hanna, to operate on him if he had to be operated on; that Hanna said he wanted appellee to have some X-ray pictures and that he had a new laboratory recently fitted up and run by his assistant, Magee; that appellee went to Magee the next afternoon, and that the first thing said or done by either of them was that Magee instructed appellee to remove his clothing and prepare for an X-ray examination, from which evidence the jury might reasonably infer that Hanna had informed Magee that he was sending appellee there for that purpose. He further testified that Magee had trouble with the machine and so stated to him; and appellee detailed the sparking and the cross-sparking overhead and underneath the machine upon which appellee was placed upon his back. He testified that Magee told him that it did not work properly and that Magee said he did not know what was the matter and that Magee appeared to be anxious and did various things and that appellee was on the table from 2 p. m. until 4:45 p. m. During that afternoon appellee asked Magee if there was any danger of his burning or hurting appellee, and Magee said absolutely none; that one who knows his business does not burn people. Appellee further testified that later on the same afternoon appellee again asked Magee if there was any danger and that Magee said there was none and that he would not burn appellee. Appellee testified that by direction of Magee he went back the following afternoon, and that soon after he met Magee, Hanna with some visitors

came into the room, and Hanna asked appellee if he was getting his examination and was answered in the affirmative; that Hanna then said to those who were with him in the presence of Magee that this was his new X-ray laboratory which he had recently fitted up. Appellee testified that Hanna then went away, and Magee again had appellee remove his clothing and lie down upon the horizontal table; that Magee then said that his machine had not been working right; that by direction of Magee he came back next afternoon, that he undressed and was stood up against the machine in a vertical position, that he felt prickly sensations where his body touched the frame of the vertical machine against which he was standing and this frightened appellee, and appellee again asked Magee if there was any danger of being burnt, and Magee said there was absolutely none, that he did not burn people; and Magee went on with his work and appellee became sick at his stomach and exhausted, and Magee then placed him on the horizontal table and continued the examination. Appellee testified that several days afterwards he felt an itching sensation on his back and afterwards found there were great blotches on his back where the rays had been applied, that thereafter he went to Hanna's office and Hanna made an examination of the wound on his back when Cutter was present and that when Hanna saw appellee's back, he said: "We have burned you. It will take a long time to heal it"; that Hanna called in his surgical nurse and had her bandage the wound; that Hanna treated the wound for some 3 weeks during which time he called Magee up from his office on a lower floor. By the words "We have burned you," the jury might fairly have understood that Hanna meant that he was one of the parties responsible for the burning. The testimony above recited was in harmony with the admissions arising from the state of the pleadings.

The X-ray machine was what is known as a Kellicut

machine.   Dr. Benjamin Harry Orendorf of Chicago testified for plaintiff as an expert.   He showed great familiarity with the Kellicut machine and was a specialist in the use of the X-ray machine and had treated many patients and was familiar with the use of that machine, not only in Chicago, but in many other cities similar to Peoria, but not in Peoria.   It is contended that because he was not acquainted with medical and surgical practice in Peoria, he was incompetent. There is nothing in the proof to indicate that a Kellicut machine works differently in Peoria from what it does elsewhere, and we see no force in the objection. In answer to hypothetical questions Orendorf was permitted to state what was the cause of the condition he found upon the plaintiff's back and whether or not the injury was the result of an X-ray burn, and the like.   It is contended that this was erroneous as permitting the witness to decide the very question to be submitted to the jury.   There are decisions in Illinois which hold that the proper questions to such an expert are whether the facts detailed in the hypothetical question could cause the injury or might cause the injury, rather than whether they did cause the injury, but we are of opinion that this question has been settled in this State contrary to the contention of appellants.   *City of Chicago v. Didier,* 227 Ill. 571; *Chicago Union Traction Co. v. Roberts,* 229 Ill. 481; *Donnelly v. Chicago City Ry. Co.,* 235 Ill. 35; *Fuhry v. Chicago City Ry. Co.,* 239 Ill. 548.   In *City of Chicago v. Didier, supra,* the court said:

"Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions, does not support appellant's contention."

The court there distinguishes *Illinois Cent. R. Co.*

*v. Smith,* 208 Ill. 608, relied on by appellants.  In *Chicago Union Traction Co. v. Roberts, supra,* the court said:

"It is entirely immaterial whether the witness testified that the injury was the cause of the condition, or that the injury was sufficient to cause the condition or might have caused it.  In any event, the testimony was merely the opinion of the witnesses, given, as such, upon a state of facts assumed to be true.  It still remained for the jury to determine the facts, and the opinion was nevertheless an opinion only, whether it states what did cause the condition or what might cause it.  The question may be asked in either form."

In *Fuhry v. Chicago City Ry. Co., supra,* the court said:

"It is immaterial whether the witness testified that the injury might or could cause the condition or that it did cause it.  In any event the testimony was merely the opinion of the witness based upon the facts he had testified to.  It was still for the jury to determine the truth in regard to those assumed facts, as well as any others which might tend to confirm or modify their reliance upon the opinion given."

The parties disagree upon the question whether this case comes within the doctrine *res ipsa loquitur,* so that the burning is itself evidence of negligence. There are authorities to that effect in cases of burning by X-rays.  In *Shockley v. Tucker,* 127 Iowa 456, 103 N. W. 360, the court said: "We think the fact that plaintiff was severely burned is some evidence in itself that the treatment was improper, and it cannot be said that the verdict lacks support in this respect in the evidence." In *Jones v. Tri-State Tel. & Tel. Co.,* 118 Minn. 217, 4 N. C. C. A. 832, 136 N. W. 741, the court said:

"The instrumentality was under the exclusive control of defendant, and there is sufficient evidence that injury to the subject is not a necessary result of the taking of an X-ray picture, if proper instrumentalities and proper care are used.  Certainly we cannot say

that plaintiff's injuries were not the result of the exposure. These facts are enough to make the case one of *res ipsa loquitur,* and to make the burden on defendant to show that there was no negligence. Defendant did not show this, at least conclusively. Indeed, there was sufficient evidence of negligence, even without the *res ipsa* rule, to make a case for the jury.'' In *George v. Shannon,* 92 Kan. 801, 6 N. C. C. A. 1086, 142 Pac. 967, the court said, speaking of a given instruction:

''Reduced to a sentence, it is this: If the taking of such pictures in a proper and careful manner does not necessarily result in injury, then the fact that injury did result is some evidence (which may be rebutted) that proper care and skill were not exercised. We find no error in the instruction.''

When the fact that plaintiff was burned severely is taken in connection with the assurances given by Magee to plaintiff that he would not be burned and with the testimony of Orendorf, which clearly shows that the use of a Kellicut machine with ordinary skill will not burn a patient, unless it is intended to burn him, as in treating a cancer and the like, we think it clear that plaintiff was burned because of a lack of ordinary care in the operation of the machine. The proof shows that the machine was out of order and the operator knew it, which makes the negligence only the greater.

Appellants contend that they are not jointly liable. We are of opinion that they are so liable under the admissions arising from the state of the pleadings, coupled with the oral proofs, under principles similar to those laid down in *Republic Iron & Steel Co. v. Lee,* 227 Ill. 246, and *Sullivan v. Corn Products Refining Co.,* 245 Ill. 9, and other like cases. We find no reversible error in the rulings of the court upon the evidence and are of opinion that in this action of tort what one defendant said in the absence of the other is competent evidence, at least against himself. This is not a case where there must necessarily be a verdict

against both defendants or none.  It follows from what we have heretofore said that in our opinion the court properly refused to exclude plaintiff's evidence and to direct a verdict for defendants.

It is argued that plaintiff's given instruction No. 2 was erroneous in permitting a recovery for future suffering.  The declaration charged that the injury was permanent, and the proof showed that it had continued up to the time of the trial and was likely to continue for several years in the future.  The instruction was therefore proper and the direction to allow for such future suffering was followed by the words "if any."  Of defendants' refused instructions we think it sufficient to say that several of them were mere abstract propositions of law, which on that account it was not error to refuse, that some of them were embodied in instructions given at the request of defendants, and others decided questions of fact.

We think it perhaps the most serious question in the case whether the damages awarded are excessive.  The proof shows that plaintiff had not been reduced in his earning capacity by these burns.  It showed that nearly all of the time from the application of these X-rays to the time of this trial, which was nearly 2 years, plaintiff has had an open sore upon his back, constantly discharging and sloughing off and adhering to his clothing.  It was healed up but it broke out again.  He suffered great pain.  His back is weak.  He cannot walk a great distance.  He suffers very much from fatigue.  He will suffer the effects of this injury for several years in the future.  It is also a fact of which we take judicial notice (*Brown v. Piper,* 91 U. S. 37), that, because of the depreciation of our currency, or the high cost of living or some other reason, this verdict is of no more intrinsic value than $3,000 would have been before the European War.  Upon a careful consideration of all the proof as to the sufferings of plaintiff, we would not be warranted in reducing this

verdict, which the trial judge has approved. As to all the proof in this case, it is to be borne in mind that it stands uncontradicted, when contradiction was easy if plaintiff's proofs were untrue.

The judgment is therefore affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE NIEHAUS took no part.